IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM CORLESS and KEMA CORLESS,<br><br>       Plaintiffs,<br><br>   vs.<br><br>SCHUYLER COLE, COLENET LLC, ROBERTO LOPES, TERESA ABELLA, TEAM REAL ESTATE, INC., DOE ENTITIES 1-10, and DOE INDIVIDUALS 1-20,<br><br>       Defendants. | Civ. No. 13-00700 ACK-BMK |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### PROCEDURAL BACKGROUND

On December 18, 2013, Plaintiff Kema Corless, proceeding pro se, filed a Complaint against Defendants Schuyler Cole, Colenet LLC, Roberto Lopes, Teresa Abella, and Team Real Estate, Inc. (Doc. No. 1.)

On January 23, 2014, Plaintiff Kema Corless filed a Motion for Default Judgment. (Doc. No. 13.) On February 5, 2014, Defendants filed an Opposition to Plaintiff's Motion for Default Judgment and a Counter-Motion to Set Aside Entry of Default and Quash Proofs of Service. (Doc. No. 17.) After the parties stipulated to withdraw their cross-motions, the Court granted

-1-

Plaintiff Kema Corless leave to amend the Complaint. (<u>See</u> Doc. Nos. 27-30.)

On March 19, 2014, the operative First Amended Complaint ("FAC") was filed. (Doc. No. 31.) The FAC adds William Corless as a named Plaintiff. (<u>Id.</u>)

On April 9, 2014, Defendants filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion" or "Defs.'s Mot."). (Doc. No. 35.) Plaintiffs filed an Opposition ("Opposition" or "Pls.'s Opp.") on June 13, 2014. (Doc. No. 40.)[1/] On June 19, 2014, Defendants filed a Reply ("Reply" or "Defs.'s Reply"). (Doc. No. 41.)

On June 23, 2014, the Court held a hearing regarding Defendants' Motion.

## FACTUAL BACKGROUND[2/]

Plaintiff William Corless ("William") owns and operates a limited liability company called "Corless Productions." (FAC ¶ 3.) On September 6, 2011, Corless Productions entered into a "Lease Agreement" with Defendant Team Real Estate, Inc. ("TRE"), as agent for Defendant Colenet LLC ("Colenet"), for a commercial office space at the "Makaha Marketplace," located at

_____

[1/]The Court will consider Plaintiffs' Opposition, notwithstanding the fact that it was untimely filed.

[2/]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

84-1170 Farrington Highway, B2-Office Suite # 5, Waianae, HI
96792. (FAC Ex. A at 1-2.) Defendant Schuyler Cole ("Cole") is
the owner of Colenet and TRE. (Id. ¶ 5.) Defendant Robert Lopes
("Lopes") is TRE's principal broker. (Id. ¶ 7.) Defendant Teresa
Abella ("Abella") is the property manager for Makaha Marketplace.
(Id. ¶ 8.)

Plaintiff Kema Corless ("Kema") is William's wife. (Id.
¶ 4.) Kema suffers from epilepsy and chronic grand mal seizures.
(Id.) In 1997, Kema had a seizure and fell, fracturing her ankle
in multiple locations. (Doc. No. 40-2 ("Declaration of Kema
Corless") ¶ 2.) The resulting surgery required the installation
of steel plates and pins in her ankle. (Id.) In addition, Kema
suffers from several medical conditions associated with her feet
and legs including lymphedema, open ulcers, bone spurs, neuroma,
and pinched nerves. (Id. ¶¶ 5 & 7-8.)[3] Due to these medical
conditions, Kema has difficulty walking and experiences pain when
climbing stairs. (Id. ¶¶ 6 & 9.) During the relevant time period,
Kema worked with her husband at Corless Productions' office at
the Makaha Marketplace. (FAC ¶ 4.)

Plaintiffs allege that Defendants discriminated against
Kema on the basis of her "disability," in violation of the
Americans With Disabilities Act ("ADA"), while Corless

_____

[3]Attached to Kema's declaration are copies of x-rays and a
picture related to the various medical conditions described in
her declaration.

Productions was a tenant at the Makaha Marketplace. (Id. at 2.)
Plaintiffs also allege that Defendants breached various
provisions of the Lease Agreement. (See, e.g., FAC ¶ 15.)

With respect to their ADA claims, Plaintiffs allege,
inter alia, that Defendants denied them access to the building's
elevators and failed to equip the building with handicap parking
stalls and handicap-equipped bathrooms. (Id. at 2.) Further,
Plaintiffs allege that Defendants committed several retaliatory
acts in response to Plaintiffs' complaints of disability
discrimination. For instance, Plaintiffs assert that, after they
complained to Abella about their lack of access to the building's
elevators, Abella told them to move their office "downstairs and
pay higher rent." (Id. ¶¶ 21-22.)

On December 2, 2013, William wrote a "cease and desist"
letter addressed to Abella and Cole regarding an alleged failure
to comply with the ADA. (Id. Ex. B.) In the letter, William
stated that the property manager of Makaha Marketplace, Abella,
ordered Kema and William to give Abella the keys to the upstairs
and downstairs elevators and "back door which is associated with
the only wheelchair ramp" in the building. (Id.) In the final
paragraph of the letter, William demanded that Abella or Cole
provide Plaintiffs with keys to the back door and elevators.
(Id.) Evidently, on December 6, 2013, Defendants acceded to
William's demands in part and provided him with keys to the back

-4-

door and downstairs elevator. (See Defs.'s Mot. Ex. 1.)

On December 13, 2013, Cole sent a letter to William notifying William that Cole, pursuant to the terms the Lease Agreement, was terminating the lease effective February 1, 2014. (FAC Ex. C.) Plaintiffs assert that Cole terminated the lease in retaliation for William sending the cease and desist letter. (Id. ¶ 30.)

After the lease was terminated, Plaintiffs moved to Las Vegas, Nevada. (Id. ¶ 32.) Plaintiffs assert that they were unable to ship the tools, equipment, and inventory associated with their business, and that these items are currently in storage in Hawaii. (Id.)

Plaintiffs bring the following claims in their FAC: "Breach of Contract" (Count One); "Discrimination" (Count Two); "Retaliation" (Count Three); "Violation of H.R.S. § 489-3" (Count Four); Violation of "H.R.S. § 489-5" (Count Five); Violation of "ADA Title II" (Count Six); Violation of "ADA Title V" (Count Seven); and Violation of "ADA Title III" (Count Eight). (FAC ¶¶ 33-103.)

## STANDARD

## I.      Motion to Dismiss Under Rule 12(b)(1)

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Such challenges may be either "facial" or "factual." Wolfe v.

Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings. Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(1) motion, the court must assume the plaintiff's allegations in the complaint to be true and draw all reasonable inferences in his favor. Wolfe, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. at 362 (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."

<u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112, 1121
(9th Cir. 2009) (citation omitted). In these circumstances, the
court may look beyond the complaint without having to convert the
motion into one for summary judgment. <u>U.S. ex rel. Meyer v.
Horizon Health Corp.</u>, 565 F.3d 1195, 1200 n.2 (9th Cir. 2009).
When deciding a factual challenge to the court's subject matter
jurisdiction, the court "need not presume the truthfulness of the
plaintiffs' allegations." <u>Id</u>.

Here, Defendants assert that its Motion mounts both
a facial and factual attack on the Court's subject matter
jurisdiction. (Defs.'s Mot. at 6.) However, Defendants attach an
exhibit and three declarations to its Motion; which challenge the
truth of the allegations in the FAC. Accordingly, the Court
treats Defendants' Motion as bringing a factual attack on the
Court's subject matter jurisdiction.

## II.     **Special Consideration For Pro Se Litigants**

A pro se litigant's pleadings must be read more
liberally than pleadings drafted by counsel. <u>Haines v. Kerner</u>,
404 U.S. 519, 520–21 (1972); <u>Wolfe v. Strankman</u>, 392 F.3d 358,
362 (9th Cir. 2004); <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th
Cir. 1987). When a plaintiff proceeds pro se and technically
violates a rule, the court should act with leniency toward the
pro se litigant. <u>Draper v. Coombs</u>, 792 F.2d 915, 924 (9th Cir.
1986); <u>Pembrook v. Wilson</u>, 370 F.2d 37, 39–40 (9th Cir. 1966).

However, "a pro se litigant is not excused from knowing the most basic pleading requirements." <u>Am. Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1107–08 (9th Cir. 2000). Pro se litigants must follow the same rules of procedure that govern other litigants. <u>Motoyama v. Haw. Dep't of Transp.</u>, 864 F.Supp.2d 965, 975 (D. Haw. 2012).

## DISCUSSION

This district court recently explained that "[a] federal court does not have authority to exercise supplemental jurisdiction over remaining state-law claims when the federal-law claims are dismissed for lack of subject matter jurisdiction. Supplemental jurisdiction may only be invoked when the district court has 'a hook of original jurisdiction on which to hang it.'" <u>Parks v. Watkins</u>, Civ. No. 11-00594 HG-RLP, 2013 WL 431950, at *3 (D. Haw. Jan. 31, 2013) (quoting <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805-06 (9th Cir. 2001)).

The FAC asserts that the Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' ADA claims and supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367. (FAC ¶ 1.) Accordingly, the Court's jurisdiction over this case hinges on Counts Six to Eight of the FAC, as they contain the only claims brought under federal subject matter

jurisdiction, namely the ADA.[4/]

Defendants argue that the Court lacks subject matter
jurisdiction over this case because (1) Plaintiffs lack standing
to assert ADA violations and (2) Plaintiffs' ADA claims are moot.
(Defs.'s Mot. at 7-12.) The Court will address each argument in
turn.

## I.      Whether Plaintiffs Have Standing to Assert ADA
Violations

Counts Six to Eight of the FAC allege violations of the
ADA. (FAC ¶¶ 75-103.) Each count is brought on behalf of Kema
Corless. (Id.)

## A.      Claims Under Title II of the ADA (Count Six)

Count Six alleges that Defendants violated Title II of
the ADA, 42 U.S.C. § 12131 et seq. (Id. ¶ 76.) Title II of the
ADA states, in relevant part, that "no qualified individual with
a disability[5/] shall, by reason of such disability, be excluded
from participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subject to

_____

[4/]Plaintiffs have only asserted that the Court has subject
matter jurisdiction under the ADA. Accordingly, the Court will
not address whether there is also diversity jurisdiction in this
case.

[5/]Defendants state that they were aware that Kema suffered
from epilepsy, but were unaware that Kema suffered from various
other medical conditions since those conditions were not alleged
in the FAC. (Rough Transcript at 8.) Nevertheless, for the
limited purposes of the instant Motion, Defendants assume that
Kema is a "qualified individual with a disability" within the
meaning of the ADA. (Id.)

discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). The ADA defines "public entity" as including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State." Id. § 12131(1).

Although Plaintiffs assert that Makaha Marketplace is a "public entity"; they do not provide any facts in support of this legal conclusion. (See FAC ¶ 77.) Further, Defendants submit declarations from Lopes, Cole, and Abella; which indicate that no Defendant in this case is a state or local government entity or agent. (Lopes Decl. ¶¶ 2-3; Cole Decl. ¶¶ 2-3; Abella Decl. ¶¶ 2-4.) Plaintiffs do not present any affidavits or other evidence contradicting the statements in these declarations. See Colwell, 558 F.3d at 1121 (holding that, once the moving party submits affidavits or other evidence, the burden is on the nonmoving party to present affidavits or other evidence necessary to satisfy its burden of establishing that the court possesses subject matter jurisdiction). Because Title II only applies to "public entities," the Court GRANTS Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction as to Count Six of the FAC.

**B.**      **Claims Under 42 U.S.C. § 12203 and Title III of the ADA (Counts Seven and Eight)**

In Count Seven, Plaintiffs allege that Defendants violated the anti-retaliation provision of the ADA, 42 U.S.C. § 12203. (FAC ¶ 87.) That provision provides, in relevant part:

> (a) Retaliation
>
> No personal shall discriminate against any
> individual because such individual has
> opposed any act or practice made unlawful by
> this chapter . . .
>
> (c) Remedies and procedures
>
> The remedies and procedures available under
> sections 12117, 12133, and 12188 of this
> title shall be available to aggrieved persons
> for violations of subsections (a) and (b) of
> this section, with respect to subchapter I,
> subchapter II, and subchapter III of this
> chapter, respectively.

Instead of delineating specific remedies for retaliation claims,
section 12203(c) references the remedies and procedures available
pursuant to 42 U.S.C. §§ 12117 ("Title I"), 12133 ("Title II"),
and 12188 ("Title III").

Plaintiffs do not allege that Defendants violated Title
I of the ADA, which prohibits employment discrimination on the
basis of disability. Further, as explained above, Plaintiffs
cannot assert any claims under Title II of the ADA. Accordingly,
the Court finds that Plaintiffs' retaliation claims are
predicated on asserting their rights under Title III of the ADA
(the basis for Count Eight) and, therefore, the only remedies
available to Plaintiffs for their ADA retaliation claims are
those provided in Title III. See Alvarado v. Cajun Operating Co.,
588 F.3d 1261, 1264 (9th Cir. 2009) (finding that, because
plaintiff's ADA retaliation claims were based on asserting his
rights under Title I, the remedies available for his ADA

retaliation claims were those prescribed in Title I).

Count Eight alleges that Defendants violated Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability" in places of "public accommodation."[6] 42 U.S.C. § 12182(a).

The only remedy available under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188; <u>Wander v. Kaus</u>, 304 F.3d 856, 858 (9th Cir. 2002); <u>Deck v. American Hawaii Cruises, Inc.</u>, 121 F.Supp.2d 1292, 1297 n.5 (D. Haw. 2000).[7] Accordingly, the issue before the Court is whether Plaintiffs have Article III standing to assert claims for injunctive relief under the ADA.

In order to establish Article III standing, Plaintiffs must show three things:

> First, [they] must have suffered an "injury
> in fact" – an invasion of a legally protected
> interest which is (a) concrete and
> particularized, and (b) actual or imminent,
> not conjectural or hypothetical. Second,
> there must be a causal connection between the
> injury and the conduct complained of. . . .
> Third, it must be likely, as opposed to
> merely speculative, that the injury will be

---

[6] For the limited purposes of the instant Motion, Defendants assume that Makaha Marketplace is a "public accommodation" within the meaning of Title III. (Rough Transcript at 9.)

[7] Although Plaintiffs are limited to injunctive relief for their ADA claims; Plaintiffs are nevertheless allowed to add state-law claims for money damages, assuming the Court has federal subject matter jurisdiction. <u>Doran v. Del Taco, Inc.</u>, 373 F. Supp.2d 1028, 1030 (C.D. Cal. 2005), <u>overruled on other grounds</u>, <u>Doran v. Del Taco, Inc.</u>, 237 Fed. Appx. 148 (9th Cir. 2007).

redressed by a favorable decision.
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)
(internal quotation marks and citations omitted).[8/] Here,
Defendants argue that Plaintiffs fail to satisfy the first and
second elements of Article III standing.[9/]

With respect to the first element, Defendants argue
that Plaintiffs have not met their burden as to the second prong
of the "injury in fact" requirement. Specifically, Defendants
argue that Plaintiffs have failed to establish that their injury
is "actual or imminent" because Plaintiffs have vacated Makaha
Marketplace and relocated to Nevada. (Defs.'s Mot. at 7.)

"In the context of a suit for injunctive relief, [the
actual or imminent injury requirement] may only be satisfied
where a plaintiff demonstrates a sufficient likelihood that he
will again be wronged in a similar way. That is, he must
establish a real and immediate threat of repeated injury." D'Lil
v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1036-37
(9th Cir. 2008) (citing Fortyune v. American Multi-Cinema, Inc.,

---

[8/]Furthermore, in evaluating whether a civil rights litigant
has satisfied Article III standing requirements, "[t]he Supreme
Court has instructed [courts] to take a broad view of
constitutional standing, especially where, as under the ADA,
private enforcement suits 'are the primary method of obtaining
compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d
1034, 1039-40 (9th Cir. 2008) (quoting Trafficante v. Metro. Life
Ins. Co., 409 U.S. 205, 209 (1972)).

[9/]Defendants do not argue that Plaintiffs failed to satisfy
the "redressability" element of Article III standing.

364 F.3d 1075, 1081 (9th Cir. 2004) (internal quotations marks and alteration omitted)).

As to ADA Title III claims for injunctive relief, the Ninth Circuit has stated that the ADA is not "an open-ended private attorney general statute." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 953 (9th Cir. 2011) (en banc). "An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury." Id. "He lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." Id.

In cases where, as here, the public accommodation being sued is far away from plaintiffs' home, the Ninth Circuit has "found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." D'Lil, 538 F.3d at 1037 (citing Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002) (holding that plaintiff established an actual or imminent injury where he encountered barriers at a Holiday Paradise grocery store 70 miles from his

home and stated that "he prefers to shop at Holiday markets and that he would [return to] shop at the Paradise market [near his grandmother's home] if it were accessible") and Doran, 524 F.3d at 1037-38 (holding plaintiff demonstrated actual or imminent injury where he established intent to return to 7-Eleven store 550 miles from his home on future trips, once the barriers to access were removed)). Further, as explained in D'Lil, Plaintiffs are not required "to engage in the 'futile gesture' of visiting or returning to an inaccessible place of public accommodation in order to satisfy the standing requirement." D'Lil, 538 F.3d at 1037.

Accordingly, in order to meet the actual and imminent injury requirement, Plaintiffs must demonstrate an intent to return to Hawaii and, upon their return, a desire to visit Makaha Marketplace. Id. Here, based on the current record and the early procedural stage of this case, the Court finds that Plaintiffs have satisfied these conditions.[10] Specifically, Plaintiffs

---

[10]Defendants question the "readiness and ability" of Plaintiffs to travel from Nevada to Hawaii "given their admitted 'serious financial issues,' previous homeless status, and inability to transport certain items to Nevada." (Reply at 4-5.) The Court observes that Plaintiffs admit in their FAC that they are suffering from "serious financial issues" and were unable to take certain items associated with their business with them to Nevada. (FAC ¶ 32.) The Court further observes that Kema states that, when Plaintiffs first moved into the Makaha Marketplace in 2009, they "did not have a house" and stored "household goods" in the office. (Kema Decl. ¶ 10.) D'Lil suggests that the key to satisfying the actual or imminent injury requirement is

(continued...)

stated at the hearing that they plan on returning to Hawaii in early July 2014 in order to, inter alia, ship the "tools, equipment, and inventory" associated with their business; which are located at the "gallery" in the Makaha Marketplace. (Rough Transcript at 9 & 17; FAC ¶ 32.) Plaintiffs further assert that they will continue to visit the Makaha Marketplace "from time to time" because they "have ties to the community" and "ongoing relations with other businesses located" at the Makaha Marketplace. (Pls.'s Opp. at 8.)[11] As such, Plaintiffs have

---

[10](...continued)
demonstrating an "intent" or "desire" to return to the public accommodation. See D'Lil, 538 F.3d at 1037. Here, Plaintiffs stated during the hearing that they intend on returning to the Makaha Marketplace in early July 2014. (Rough Transcript at 9.) Even though a return trip to Hawaii may pose financial difficulties, such difficulties are not sufficient grounds alone to find that Plaintiffs' stated intent to return to Hawaii is not genuine.

[11]Plaintiffs made new factual assertions in their Opposition and at the hearing. In Smallwood v. NCSOFT, Civ. No. 09-00497 ACK-BMK, 2010 WL 727715, at *6 (D. Haw. Feb. 26, 2010), this Court, in ruling on a 12(b)(1) motion to dismiss for lack of federal subject matter jurisdiction, considered factual statements presented for the first time in the plaintiff's opposition, reasoning as follows:

> Because Plaintiff has personal knowledge of these facts, he could submit an affidavit setting forth these facts, which would thus provide evidence for his claim of jurisdiction. As he is a pro se Plaintiff, and the Courts construe pro se pleadings liberally, the Court will consider the facts alleged in the Opposition. See Zabinofsky v. U.S., No. CV-s-1252PMP(RJJ), 1995 WL 545305 (D. Nev. May 17, 1995) ("As Plaintiff appears

(continued...)

satisfied the "actual or imminent" prong of the "injury in fact" requirement.[12/]

With respect to the second element of Article III standing, Defendants argue that Plaintiffs fail to show a "causal connection" between Kema's disability and the alleged non-compliant barriers at the Makaha Marketplace. (Defs.'s Mot. at 10.)

---

[11/](...continued)
> before this Court pro se, the Court will treat Plaintiff's assertion of fact within his Opposition as if they were averred to in an affidavit.")

Pursuant to Smallwood, the Court will consider factual assertions raised for the first time in Plaintiffs' Opposition and new factual assertions made by Plaintiffs at the hearing because Plaintiffs have personal knowledge of and can submit declarations setting forth these facts. However, the Court directs Plaintiffs to file a declaration in support of these factual assertions within fourteen days.

[12/]Defendants cite to this Court's previous decision in Deck v. American Hawaii Cruises, Inc., 121 F.Supp.2d 1292 (D. Haw. 2000). In Deck, this Court found that the plaintiff lacked standing to assert injunctive relief under the ADA because she failed to show a "real or immediate threat of injury." Id. at 1298. Specifically, this Court reasoned that plaintiff's complaint did "not allege that she has any plans to use Defendant's services in the future, nor does she allege in her affidavit or deposition anything more than a conditional, speculative interest in doing so." Id. at 1298-99. Deck is readily distinguishable from the instant case. Plaintiffs stated at the hearing that they plan on returning to the Makaha Marketplace in early July 2014 and assert in their Opposition that they "have ties to the community" and "ongoing relations with other businesses" located at the Makaha Marketplace. Moreover, Deck predates the Ninth Circuit decisions described herein; which have broadened the scope of the actual or imminent injury requirement in suits for injunctive relief brought under Title III of the ADA.

The Ninth Circuit in <u>Chapman</u> held that a plaintiff, in order to satisfy Article III's standing requirements, must relate her particular disability to at least one of the alleged ADA violations. <u>Chapman</u>, 631 F.3d at 950-51 & 955. Under <u>Chapman</u>, Kema "need not have personally encountered all the barriers that impede [her] access to the [Makaha Marketplace] in order to seek an injunction to remove those barriers." <u>Id.</u> at 951 (citing <u>Doran</u>, 524 F.3d at 1047). Rather, if Kema "has standing to pursue injunctive relief as to some of the barriers that [she] actually encountered, then [she] has standing to seek an order requiring the removal of all barriers at the [Makaha Marketplace] that are related to [her] disability and that [she] is likely to encounter on future visits." <u>Id.</u>

In this case, Abella states in her declaration that she observed Kema using the stairs at the Makaha Marketplace to access the second floor and has never seen her use a wheelchair. (Abella Decl. ¶ 7.) Further, Defendants assert that Kema did not need to use the elevator because of her disability, but rather to help "Sean Harflinger," a former site manager, transport a shopping cart between floors. (Defs.'s Mot. at 10-11) (citing FAC Ex. B.)

Kema rebuts Defendants' factual assertions by describing how her medical conditions relate to the alleged ADA violations at the Makaha Marketplace. Specifically, Kema states

in her declaration that in 1997 she had a seizure and fell, fracturing her ankle in multiple locations. (Kema Decl. ¶ 2.) According to Kema, the resulting surgery required the installation of steel plates and pins in her ankle and, as a consequence, she experiences pain and discomfort when she walks. (Id.) In addition, Kema states in her declaration that she medical problems associated with her feet and legs including lymphedema, open ulcers, bone spurs, neuroma, and pinched nerves; which make climbing stairs "very painful" and walking "very difficult." (Id. ¶¶ 5-9.) Kema further states that she has to use her "left foot to climb stairs." (Id. ¶ 6.)[13]

Because she experiences pain when climbing stairs and has difficulty climbing stairs, Kema alleges that she requires the use of an elevator. (Id. ¶¶ 6, 9 & 11.) At the hearing, Kema stated that her doctor recommended that she "have access to [an] elevator at all times." (Rough Transcript at 12.) According to Kema, Defendants interfered with her access to the elevator, forcing her to walk up twenty-two stairs. (Id. at 11.) Kema states that the elevator was "poorly maintained" and "sometimes

---

[13]As noted in footnote five of page nine of this Order, Defendants have assumed for the limited purposes of the instant Motion that Kema is a "qualified individual with a disability" within the meaning of the ADA. Based on Kema's declaration and her statements at the hearing, the Court understands this includes a "disability" involving severe pain in her feet, ankles and legs; which make it "very difficult" and "very painful" to walk and climb stairs. (See Kema Decl. ¶¶ 2-3, 5-9; Rough Transcript at 11-12.)

[it] would be difficult to get it to work." (Id. ¶ 14.) Kema also assert that, although Defendants initially provided Plaintiffs keys to the elevators, security personnel disabled the elevator such that the elevator keys no longer worked. (Id. ¶ 23.) Kema states that she attempted to contact security personnel to "activate the elevator," but the security personnel ignored her "texts and phone calls." (Id. ¶ 24.) Accordingly, it appears that there is a causal connection between Kema's medical conditions and Defendants' alleged interference with Kema's access to the elevator.

Plaintiffs also appear to have standing to challenge the lack of handicap parking stalls and handicap-equipped bathrooms at the Makaha Marketplace because these alleged ADA violations "relate to [Kema's] disability" and she is "likely to encounter [them] on future visits." Chapman, 631 F.3d at 951. Specifically, as stated above, Kema has medical conditions associated with her feet and legs and has difficulty with mobility. Moreover, because Defendants have not stated that they are in the process of adding handicap parking stalls and handicap-equipped bathrooms, Kema is likely to encounter these alleged ADA violations when she visits the Makaha Marketplace in early July 2014.

For these reasons, the Court finds that Plaintiffs have standing to assert claims under 42 U.S.C. § 12203 and Title III

-20-

of the ADA and, therefore, DENIES Defendants' Motion to Dismiss
for Lack of Subject Matter Jurisdiction as to Counts Seven and
Eight of the FAC.

**II.        Whether Plaintiffs' ADA Claims are Moot**

"Mootness can be characterized as the doctrine of
standing in a time frame: The requisite personal interest that
must exist at the commencement of the litigation (standing) must
continue throughout its existence (mootness)." Foster v. Carson,
347 F.3d 742, 745 (9th Cir. 2003) (quoting Cook Inlet Treaty
Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir. 1999) (internal
quotation marks omitted)). "Mootness is a jurisdictional issue,
and 'federal courts have no jurisdiction to hear a case that is
moot, that is, where no actual or live controversy exists.'" Id.
"If there is no longer a possibility that an appellant can obtain
relief for his claim, that claim is moot and must be dismissed
for lack of jurisdiction." Id. (citing Ruvalcaba v. City of L.A.,
167 F.3d 514, 521 (9th Cir. 1999) (internal quotation marks
omitted)). "The burden of demonstrating mootness is a heavy one."
Los Angeles County v. Davis, 440 U.S. 625, 631 (1979). In the
context of claims brought under the ADA, mootness is typically
found in cases where the defendants fix or remedy all non-
compliant ADA barriers. See, e.g., Parr v. L&L Drive-Inn
Restaurant, 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000) (dismissing
as moot plaintiff's ADA claims predicated on alleged violations

that have been corrected).

Defendants argue that Plaintiffs' ADA claims are moot because (1) Plaintiffs vacated Makaha Marketplace and moved to Nevada and (2) Defendants acceded to William's request for keys to the back door and elevator. (Defs.'s Mot. at 11-12.) The Court finds both arguments unpersuasive.

As discussed in detail above, Plaintiffs have presented sufficient evidence of their present intention to return to the Makaha Marketplace. Regarding Defendants' second argument, the email correspondence between William and Defendants appears to indicate that Defendants provided William with keys to the back door and elevator. (See Defs.'s Mot. Ex. 1.) However, Kema submits that, although Defendants initially provided her husband a key to the elevator, security personnel disabled the elevator and refused to reactivate it. (Kema Decl. ¶¶ 23-24.) In any event, Defendants do not argue that they remedied or fixed all alleged ADA violations identified in the FAC. See Parr, 96 F. Supp. at 1087; Independent Living Resources v. Oregon Arena Corp., 982 F. Supp. 698, 771 (D. Or. 1997) ("If plaintiffs already have received everything to which they would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that these plaintiffs will again be subject to the same alleged wrongful conduct by the defendant.") overruled on other grounds

Miller v. California Speedway Corp., 536 F.3d 1020, 1024 (9th
Cir. 2008); National Alliance for Accessability, Inc. v. Walgreen
Co., No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at * (M.D. Fla.
Nov. 28, 2011) ("The Court likewise finds that, given the
structural changes made to Walgreens' Lake City facility, coupled
with its new ADA compliance policy and concomitant training, it
is absolutely clear that the ADA violations identified by
Plaintiffs cannot reasonably be expected to recur.") (internal
quotation marks omitted).

Accordingly, the Court finds that this case presents
a live case or controversy that is not moot.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND
DENIES IN PART Defendants' Motion to Dismiss for Lack of Subject
Matter Jurisdiction.

The Court finds that it lacks subject matter
jurisdiction over Count Six of the FAC. However, the Court finds
that it has subject matter jurisdiction over Counts Seven and
Eight of the FAC, with the qualification Defendants have assumed,
for purposes of the instant Motion only, that Kema is a
"qualified individual with a disability" and Makaha Marketplace
constitutes a "public accommodation" within the meaning of the

ADA.[14/]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, June 25, 2014.



_____
Alan C. Kay
Senior United States District Judge

<u>Corless et al. v. Cole et al.</u>, Civ. No. 13-00700 ACK-BMK: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

[14/]As noted in footnote eleven on page seventeen of this Order, the Court directs Plaintiffs within fourteen days to file a declaration in support of new factual assertions asserted by Plaintiffs in their Opposition and at the hearing.